UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-20902-CIV-COHN/SELTZER

ELIZABETH STEWART-PATTERSON,

     Plaintiff,

v.

CELEBRITY CRUISES, INC.,

     Defendant.

_____/

## ORDER ON DEFENDANT'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND TO EXCLUDE EXPERT TESTIMONY

**THIS CAUSE** is before the Court upon Defendant's Motion for Summary Judgment as to Count I of Amended Complaint [DE 39], Defendant's Motion to Strike Incompetent/Unreliable Opinions of David Alexander, M.D. [DE 40], and Defendant's Motion to Strike Incompetent/Unreliable Opinions of James Losito, M.D. [DE 41]. The Court has carefully reviewed Defendant's Motions, all related filings, and the record in this case, and the Court is otherwise fully advised in the premises.

**I.**    **Background**

    **A.**    **Material Facts**[1]

On March 25, 2011, Plaintiff Elizabeth Stewart-Patterson ("Plaintiff") was a passenger aboard a cruise ship owned and operated by Defendant Celebrity Cruises,

---

[1] Plaintiff's response to Defendant's summary-judgment motion does not include the statement of material facts required by Local Rule 56.1(a). Consequently, all material facts recited by Defendant and supported by evidence of record are deemed admitted. See S.D. Fla. L.R. 56.1(b). Nevertheless, the Court views the facts in the light most favorable to Plaintiff, the non-moving party. See Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006).

Inc. ("Defendant").  See DE 39 at 2, ¶¶ 1-2.  Plaintiff claims that as she was walking down a carpeted staircase on the ship that afternoon, she slipped on a wet substance and fell down the stairs, fracturing her left ankle.  See id. at 3-4, ¶¶ 3, 5; DE 1 at 2-3, ¶ 9.  At her deposition, Plaintiff testified that she did not know what type of liquid was on the stairs or the source of the liquid.  See DE 39-4 at 17.  Plaintiff stated that the liquid "seem[ed] like it had been there quite a long time" and that it was "greasy, soapy, slippery."  Id. at 17-18.  She also stated that there was "quite a bit" of liquid because she felt it "splash up [her] legs and arms and [her] feet" when she fell.  Id. at 17.  According to Plaintiff, no signs were posted warning of the wet steps.  See id. at 18.

Shortly after her fall, Plaintiff visited the ship's infirmary, where the onboard physician performed x-rays and diagnosed Plaintiff with a fractured ankle.  See DE 39-1; DE 39-4 at 19.  The doctor placed a soft wrapping around Plaintiff's lower leg and prescribed her pain medication.  See id.  Plaintiff testified that while she was in the infirmary,

> there was an officer of the ship, and he had a navy blue, like a dark blue officer suit with the braiding and everything, so he was like an official that worked for the ship, and . . . he came, he seemed very concerned that I had hurt myself. And he was there, and then he left.  And I don't know how long he was gone for while I was in the clinic, but when he came back, he said, you know, "We're so sorry."  Something to — I can't remember word for word, but something to the effect that "We had opinion cleaning in that area, and we're very sorry.  If there is something we can do," that sort of thing.

DE 39-4 at 18.

In addition to treating Plaintiff's ankle injury, the onboard physician referred her to an orthopedist in Cartagena, Colombia, apparently a port of call for the ship.  See DE 39-1; DE 39-4 at 20.  More, Plaintiff alleges that Defendant required her to undergo an

orthopedic consultation with the Colombian doctor or to sign a form releasing Defendant from liability.  See DE 39-4 at 21.  According to Plaintiff, the onboard doctor assured her that the Colombian orthopedist was highly qualified.  See id. at 20. Although Plaintiff ultimately agreed to see the orthopedist, she contends that the Colombian doctor failed to properly treat her ankle fracture, thereby aggravating her injury.  See id. at 21-23, 31.  Plaintiff claims that as a result of her fall and the inadequate medical care in Colombia, she later had to undergo two surgeries on her ankle.  See DE 1 at 3, ¶ 14; DE 50 at 2, ¶ 2.

B.     **Procedural History**

On March 5, 2012, Plaintiff filed this personal-injury action against Defendant. See DE 1.  Plaintiff's Complaint alleged three counts.  First, Plaintiff pleaded a negligence claim asserting that Defendant failed to maintain the ship's staircase in a safe manner and to warn passengers of its slippery condition.  See id. at 3-4.  Second, Plaintiff asserted a claim for negligent mode of operation, alleging that Defendant failed to reduce or eliminate the dangerous condition before it occurred.  See id. at 5-6.  Third, Plaintiff pleaded a claim for medical negligence, contending that Defendant did not use reasonable care in selecting, and requiring Plaintiff to be treated by, the doctor in Colombia.  See id. at 6-7.  Plaintiff's Complaint sought compensatory damages for physical and mental injuries, including ongoing medical expenses.  See id. at 5-7.

In response to Plaintiff's Complaint, Defendant moved to dismiss the negligent-mode-of-operation and medical-negligence claims for failure to state a claim upon which relief can be granted.  See DE 9; Fed. R. Civ. P. 12(b)(6).  The Court dismissed Plaintiff's claim for negligent mode of operation, holding that federal admiralty law does

not recognize such a claim.  <u>See</u> DE 20 at 4-6.  But the Court declined to dismiss the medical-negligence claim, finding that Plaintiff had "adequately pleaded that Defendant failed to exercise reasonable care in choosing the Colombian doctor and thus is liable for any injuries resulting from that decision."  <u>Id.</u> at 7.  The Court therefore allowed Plaintiff to proceed on her negligence and medical-negligence claims.  <u>See</u> <u>id.</u> Defendant subsequently filed an Answer to the remaining claims in Plaintiff's Complaint, denying liability and asserting several affirmative defenses.  <u>See</u> DE 21.

On October 3, 2012, Defendant filed its present motion seeking summary judgment on Plaintiff's negligence claim.  <u>See</u> DE 39.  Defendant argues that it cannot be held liable for Plaintiff's slip-and-fall accident because Plaintiff has not shown that Defendant had actual or constructive knowledge of a slippery liquid on the ship's stairs. Further, on October 5, 2012, Defendant filed two motions to exclude expert testimony by Drs. David Alexander and James Losito, physicians who treated or examined Plaintiff after her injury.  <u>See</u> DE 40, 41.  Defendant maintains that both doctors' opinions are unreliable and thus inadmissible under the standards for expert testimony. All three of Defendant's motions are now fully briefed and ripe for decision.

## II.     Discussion

### A.     Motion for Partial Summary Judgment

#### 1.     Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To satisfy this burden, the movant must point out to the Court that "there is an absence of evidence to support the nonmoving party's case."  Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  As Rule 56 explains, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(3).  Therefore, the non-moving party "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial."  Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker, 911 F.2d at 1577.  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (citations omitted).

5

The Court's function at the summary-judgment stage is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249.  In making this determination, the Court must discern which issues are material:  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248. Moreover, in deciding a summary-judgment motion, the Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  See Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006).

## 2.    Analysis of Defendant's Motion

Because Defendant's alleged negligence occurred aboard a ship on navigable waters, federal admiralty law, not state law, governs Plaintiff's claims.  See Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 628 (1959).  This is true even though Plaintiff has alleged diversity of citizenship as the basis for federal jurisdiction here.  See id. at 627-28; see also Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1334 (11th Cir. 1984) ("Plaintiffs alleged diversity of citizenship as the jurisdictional basis of this suit.  Since the complained of injury occurred upon a ship in navigable waters, admiralty jurisdiction is also present and maritime law governs the outcome of the suit." (citing Kermarec, 358 U.S. at 628)).  Still, "when neither statutory nor judicially created maritime principles provide an answer to a specific legal question, courts may apply state law provided that the application of state law does not frustrate national interests in having uniformity in admiralty law."  Coastal Fuels Mktg., Inc. v. Fla. Express Shipping Co., 207 F.3d 1247, 1251 (11th Cir. 2000) (per curiam).

6

Under federal admiralty law, a shipowner owes to all persons properly aboard the ship "the duty of exercising reasonable care under the circumstances of each case." Kermarec, 358 U.S. at 632.  When a passenger alleges that she was injured by a dangerous condition on the ship, this standard of care "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition . . . ."  Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318, 1322 (11th Cir. 1989) (per curiam).  In Keefe, another case brought by a cruise-ship passenger who slipped and fell on a wet floor, the Eleventh Circuit explained that the shipowner's liability "hinge[d] on whether it knew or should have known about the treacherous wet spot."  Id.  Because the district court had "made no express finding as to how long the particular unsafe condition at issue here existed prior to [plaintiff's] mishap," id., the court of appeals vacated a judgment in favor of the passenger and remanded for additional fact-finding concerning the shipowner's knowledge of the slippery condition. See id. at 1323, 1326.

Here, therefore, to establish that Defendant acted negligently regarding the alleged slippery condition on the ship's staircase, Plaintiff must first show that Defendant had actual or constructive knowledge of that condition at the time of Plaintiff's accident.  Defendant maintains that Plaintiff cannot meet this burden because she has offered no competent evidence about what type of liquid was on the stairs, where the liquid came from, or how long it had been there before she slipped on it.

To prove Defendant's knowledge of the slippery condition, Plaintiff relies heavily on video footage of the slip-and-fall incident, taken by one of the ship's surveillance cameras.  See DE 52.  This one-minute video shows a crew member vacuuming a carpeted landing at the top of three adjacent staircases just before Plaintiff fell down

7

one of the outer staircases.  Plaintiff asserts that the crew member was also shampooing the carpet in that area, as demonstrated by a yellow warning sign one side of the landing (the side opposite the staircase where Plaintiff fell).  Plaintiff further contends that "a light colored substance is visible on the [landing] carpet" and that the middle stairs "are unevenly colored and appear to be very wet."  DE 50 at 2-3.

The record evidence, however, does not support Plaintiff's interpretation of the video footage.  First, Defendant has submitted a rebuttal affidavit from Faniel Deliscar, the crew member who was vacuuming the landing when Plaintiff fell.  See DE 55-1 at 1. Deliscar explains that he was not shampooing the carpet in that area, nor had he placed any cleaning substance on the landing or stairs, but was instead "performing routine vacuuming."  Id.  Deliscar further states that he placed the yellow sign on the landing not because the carpet was wet but "to warn passengers of the electric cord for the vacuum I was using at the time."  Id.  Plaintiff offers no evidence to refute this testimony.[2]  Moreover, based on the Court's review of the video footage, no wet areas or foreign substances are visible on any part of the carpet.  While the Court recognizes that the video's resolution is limited, the discolorations noted by Plaintiff appear to be patterns in the carpet, distortions in the video recording, or both.[3]

Nor has Plaintiff offered any other substantial evidence showing that Defendant knew or should have known of a wet substance on the staircase.  Plaintiff testified that

_____

[2]  Although Plaintiff requested to depose Deliscar, the record indicates that the parties were not able to schedule his deposition before the discovery cutoff.  See DE 55-1 at 2-9.

[3]  Plaintiff argues that Deliscar was looking at the wet area of the stairs before Plaintiff fell but did nothing to warn her of the slippery condition.  The video footage shows, however, that Deliscar looked in Plaintiff's direction on the staircase only **after** she fell.

8

while she was in the ship's infirmary, an unidentified officer of the ship expressed regret for Plaintiff's accident and stated that there had been "opinion cleaning in that area." DE 39-4 at 18.  But Plaintiff has provided no other information about the identity of this officer or his specific role with Defendant, and there is no indication that Plaintiff sought discovery concerning the officer.  Therefore, Plaintiff has not shown that the officer's alleged statements—which are otherwise hearsay—would be admissible at trial. See, e.g., Fed. R. Evid. 801(d)(2)(C), (D) (providing that a statement is not hearsay if it is offered against an opposing party and was made by either "a person whom the party authorized to make a statement on the subject" or "the party's agent or employee on a matter within the scope of that relationship").  Further, Plaintiff could remember the officer's statements only in general terms, calling into question the reliability of this evidence.  And even if the officer's statements were admissible, they are not significantly probative of whether Defendant knew or should have known of a slippery condition on the stairs.  The officer's reference to "opinion cleaning" in the area of Plaintiff's accident does not indicate what type of cleaning was being performed, whether the cleaning included the particular staircase where Plaintiff fell, or how long before the accident the cleaning occurred.

Plaintiff also points to her deposition testimony that the liquid on the steps "seem[ed] like it had been there quite a long time."  DE 39-4 at 17.  Plaintiff, though, does not explain the basis for this conclusion.  To the contrary, her testimony that she felt the liquid "splash up [her] legs and arms and [her] feet" suggests that the substance had not been there long enough to be fully absorbed into the carpet or dry naturally.  Id.

Also, this is not a case where Defendant's knowledge of the slippery condition can be inferred from the nature of the substance and its location.  Cf. Castellanos v.

Target Corp., No. 10-62456-CIV, 2011 WL 5178334, at *4-*5 (S.D. Fla. Oct. 14, 2011)

(finding a disputed issue of fact on retailer's constructive knowledge of spilled bleach

because there were track marks in the bleach puddle and store employees nearby who

could have seen the spill).  The presence of an apparently invisible liquid on a carpeted

stairwell of a cruise ship—one of three staircases on a single landing alone—does not

inherently show that Defendant should have known of the slippery condition.  Indeed, it

appears that Plaintiff herself did not see the liquid before she slipped on it, and no wet

substance is visible on the surveillance video.  And though Plaintiff described the liquid

as "greasy, soapy, slippery," DE 39-4 at 17-18, there is no proof of what the substance

was or how it got on the steps.  Last, no evidence indicates that Defendant's employees

frequently travel the staircase where Plaintiff fell, and the video footage suggests that

the area is not particularly busy.

For all these reasons, the Court finds that Plaintiff has not demonstrated a

genuine dispute of material fact about whether Defendant had actual or constructive

knowledge of the alleged slippery condition on the staircase.  See Keefe, 867 F.2d at

1322.  Defendant's motion for summary judgment on Plaintiff's negligence claim is

therefore granted.

### B.    Motions to Exclude Expert Testimony

#### 1.    Standards for Expert Testimony

Federal Rule of Evidence 702 governs the admission of expert testimony.

See Fed. R. Evid. 702; see Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir.

2005).  To determine if expert testimony is admissible under Rule 702, district courts

must consider whether "(1) the expert is qualified to testify competently regarding the

matters he intends to address; (2) the methodology by which the expert reaches his

conclusions is sufficiently reliable . . . ; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." Rosenfeld v. Oceania Cruises, Inc., 654 F.3d 1190, 1193 (11th Cir. 2011) (internal quotation marks omitted).  "The party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence."  Rink, 400 F.3d at 1292.

In assessing the reliability of an expert's methodology, courts may consider the following factors regarding the expert's theory or technique:  (1) whether it can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) its known or potential rate of error; and (4) whether it is generally accepted in the relevant field.  See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149-50 (1999) (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592-94 (1993)).  This "test of reliability is 'flexible,' and Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case."  Id. at 141.  Indeed, "[d]istrict courts have substantial discretion in deciding how to test an expert's reliability."  Rink, 400 F.3d at 1292 (internal quotation marks omitted).

In applying these standards, "district courts must act as 'gatekeepers' which admit expert testimony only if it is both reliable and relevant. "  Id. at 1291 (citing Daubert, 509 U.S. at 589).  Yet "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence."  Quiet Tech. DC-8, Inc. v. Huerl-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003).  "Quite the contrary, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'"  Id. (quoting Daubert, 509 U.S. at 596 (alteration in original)).

11

### 2.    Dr. David Alexander

Defendant moves to exclude certain expert testimony by Dr. David Alexander, the orthopedic surgeon who performed two operations on Plaintiff's ankle following her injury aboard the cruise ship.  Defendant argues that two of Dr. Alexander's opinions concerning Plaintiff's medical-negligence claim are unreliable:  (1) that Dr. Ramon Hernandez, the physician who treated Plaintiff in Colombia, failed to meet the appropriate standard of care because he did not perform a closed reduction of Plaintiff's ankle fracture;[4] and (2) that if Dr. Hernandez had properly treated Plaintiff's fracture, she likely could have avoided surgery.  Defendant claims that these opinions are speculative because they are "premised solely on information received from Plaintiff, a lay person with no medical training."  DE 40 at 2 (emphasis omitted). The Court finds this argument meritless.

Federal Rule of Evidence 703 permits an expert to base his opinions on "facts or data in the case that the expert has been made aware of or personally observed."  Fed. R. Evid. 703.  Even if the facts or data underlying the expert's opinion would be inadmissible, the opinion itself may be admitted "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject."  Id. The advisory committee notes to Rule 703 specifically explain that a physician may rely on wide range of sources in forming medical opinions, including facts that the doctor learns "other than by his own perception":

> [A] physician in his own practice bases his diagnosis on
> information from numerous sources and of considerable

---

[4] According to Dr. Alexander, a closed reduction involves manipulating the fractured extremity and thereby "chang[ing] the position of the fracture to an acceptable position."  DE 53-1 at 9.

> variety, including statements by patients and relatives,
> reports and opinions from nurses, technicians and other
> doctors, hospital records, and X rays.  Most of them are
> admissible in evidence, but only with the expenditure of
> substantial time in producing and examining various
> authenticating witnesses.  The physician makes life-and-
> death decisions in reliance upon them.  His validation,
> expertly performed and subject to cross-examination, ought
> to suffice for judicial purposes.

Fed. R. Evid. 703 advisory committee notes (1972) (citations omitted).

Here, Dr. Alexander relied on multiple sources in forming his opinions about

Dr. Hernandez's treatment of Plaintiff's injury.  First, Dr. Alexander considered

information that his patient, Plaintiff, provided about the earlier treatment.  Although

Defendant argues that this was improper because Plaintiff lacked medical training,

physicians commonly base their medical opinions on statements from patients.  See id.

In addition, Dr. Alexander examined Plaintiff's injured ankle, reviewed several x-rays of

the ankle (taken at various times), and performed two surgeries on the ankle.  Based on

all this information, Dr. Alexander concluded that Dr. Hernandez had failed to perform a

closed reduction of Plaintiff's fracture and that if he had done so, Plaintiff could have

avoided surgery.  See McGuire v. Davis, 437 F.2d 570, 572 (5th Cir. 1971) (applying

the "well-settled proposition that a physician who has examined an injured party may

describe what he has seen and give his expert inferences therefrom").[5]  While

Defendant is free to challenge Dr. Alexander's opinions by cross-examining him or by

offering competing expert testimony, nothing suggests that the process by which

Dr. Alexander formed his opinions is unreliable.  See id. at 572-73 (rejecting argument

---

[5]  Decisions of the former Fifth Circuit issued before October 1, 1981, are binding precedent in the Eleventh Circuit.  See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

that physician's testimony about cause of plaintiff's leg injury was "hypothetical and based upon hearsay and conclusions," because doctor was a "qualified medical expert with a firsthand knowledge of the material facts" and therefore "well within permissible bounds in stating his opinion and inferences").  Accordingly, the Court denies Defendant's motion to exclude Dr. Alexander's testimony.[6]

### 3.    Dr. James Losito

Defendant also seeks to exclude certain expert testimony by Dr. James Losito, a podiatrist who examined Plaintiff and reviewed her x-rays and other medical records for purposes of this case.  Defendant contends that several of Dr. Losito's opinions regarding Plaintiff's medical-negligence claim lack a reliable basis:

(1)    that Dr. Hernandez failed to recommend that Plaintiff undergo surgery on her fractured ankle;

(2)    that Dr. Hernandez failed to advise Plaintiff not to put weight on her ankle;

(3)    that Dr. Hernandez did not attempt a closed reduction of Plaintiff's fracture;

(4)    that Dr. Hernandez did not diagnose a fracture of Plaintiff's ankle; and

(5)    that Plaintiff will likely require future rehabilitation, bracing, and medication and that she may need additional surgery.

See DE 41.  With one exception discussed below, the Court finds that these opinions are based on sufficiently reliable sources and thus are admissible.

---

[6]  Because the challenged opinions are admissible as expert testimony, the Court need not decide whether they would be admissible as lay testimony based on Dr. Alexander's treatment of Plaintiff.  See Williams v. Mast Biosurgery USA, Inc., 644 F.3d 1312, 1316-18 (11th Cir. 2011) (addressing differences between lay testimony and expert testimony by treating physicians).

Regarding Dr. Hernandez's alleged failure to recommend surgery, Defendant emphasizes Dr. Losito's admissions during deposition that Plaintiff underwent surgery within two weeks after her injury, the time frame that Dr. Losito considered appropriate. Defendant therefore argues that Dr. Losito's testimony fails to show that Dr. Hernandez's lack of advice about surgery caused Plaintiff any additional injury. But even accepting that Dr. Losito's testimony does not establish damages resulting from the failure to recommend surgery, his testimony is still relevant to whether Dr. Hernandez met the appropriate standards of care in Plaintiff's treatment.  This issue bears directly on Defendant's liability for "negligently hir[ing] an incompetent doctor." Barbetta v. S/S Bermuda Star, 848 F.2d 1364, 1371 (5th Cir. 1988).

As to whether Dr. Hernandez (1) advised Plaintiff not to put weight on her ankle and (2) attempted a closed reduction of her fracture, Defendant argues that Dr. Losito impermissibly relied on Plaintiff's statements to him about the treatment she received from Dr. Hernandez.  Again, however, the Court rejects this argument because doctors normally consider patients' statements in forming medical opinions.  See Fed. R. Evid. 703 advisory committee notes; supra Part II.B.2.  More, Dr. Losito noted that Dr. Hernandez's treatment records failed to reflect either that he advised Plaintiff not to put weight on her injured ankle or that he performed a closed reduction of the fracture. To the extent that Defendant seeks to challenge these bases for Dr. Losito's opinions, it may do so though cross-examination or other means at trial.

With respect to Dr. Losito's opinion that Dr. Hernandez did not diagnose a fracture of Plaintiff's ankle, Dr. Losito conceded during his deposition that the medical records showed that Dr. Hernandez did, in fact, diagnose a fracture.  See DE 54-3 at 2. Dr. Losito therefore agreed that he would not testify about this issue at trial.  See DE

15

54-2 at 16.  Further, Plaintiff does not object to excluding Dr. Losito's opinion about the fracture diagnosis.  <u>See</u> DE 54 at 3 n.1.  Thus, the Court grants Defendant's motion to exclude that opinion.

Dr. Losito also opined that Plaintiff will likely require future rehabilitation, bracing, and medication and that she may need additional surgery.  Defendant points to deposition testimony by Dr. Losito indicating that he was not certain about the exact rehabilitation, bracing, and medications that Plaintiff would require or the specific costs of those treatments.  <u>See</u> DE 54-2 at 19-20.  Also, Defendant notes that Dr. Losito testified only that it was "possible" that Plaintiff would need further surgery.  <u>Id.</u> at 20.  While the Court recognizes that Dr. Losito was less than certain about some aspects of his testimony, he adequately explained, based on his medical training and experience, that Plaintiff would likely require certain types of rehabilitation, bracing, and medications.  And though Dr. Losito's testimony about Plaintiff's "possible" need for surgery presents a closer question, the Court finds that the jury should be allowed to hear this testimony, especially since defense counsel did not explore this topic in detail during Dr. Losito's deposition.  Once again, Defendant may challenge any of Dr. Losito's opinions at trial, and the jury will decide what weight his testimony should be given.[7]  Therefore, except for the opinion regarding Dr. Hernandez's diagnosis of

---

[7]  Defendant cites cases holding that a medical expert must state his opinions to a "reasonable degree of certainty" or a "reasonable degree of probability."  <u>See</u> DE 41 at 14-18.  The cited decisions, though, are based on state-law standards not applicable to this federal admiralty action.  Here, the admission of Dr. Losito's testimony is governed by the Federal Rules of Evidence, as interpreted by <u>Daubert</u> and other cases.  While these authorities require exclusion of unreliable or speculative opinions, they do not require that expert testimony be given with any degree of "certainty" or "probability."  <u>See</u> <u>Stutzman v. CRST, Inc.</u>, 997 F.2d 291, 296 (7th Cir. 1993); <u>United States v. Gomes</u>, 2007 WL 708062, at *1 (N.D. Fla. Mar. 1, 2007).  Rather, the party offering the evidence must show that the expert is qualified to testify competently, that his methods

Plaintiff's ankle fracture, the Court denies Defendant's motion to exclude Dr. Losito's testimony.

## III.     Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.    Defendant's Motion for Summary Judgment as to Count I of Amended Complaint [DE 39] is **GRANTED**;

2.    Defendant's Motion to Strike Incompetent/Unreliable Opinions of David Alexander, M.D. [DE 40] is **DENIED**;

3.    Defendant's Motion to Strike Incompetent/Unreliable Opinions of James Losito, M.D. [DE 41] is **GRANTED** with respect to Dr. Losito's opinion concerning the failure to diagnose Plaintiff's ankle fracture, but is otherwise **DENIED**;

4.    As this case will proceed on Count III of Plaintiff's Complaint (Medical Negligence), Calendar Call remains set for December 6, 2012, at 9:00 a.m.;

5.    Trial will begin during the two-week period commencing December 10, 2012, at 9:00 a.m., or as soon thereafter as the case may be called; and

6.    Consistent with the Court's prior Orders, the following pretrial deadlines remain:

| | |
|---|---|
| Motions in Limine | November 21, 2012 |
| Responses to Motions in Limine, Joint Pretrial Stipulation, and Designation of Deposition Excerpts for Trial | December 3, 2012 |

---

are sufficiently reliable, and that the expert testimony would assist the trier of fact. See Rosenfeld, 654 F.3d at 1193.  Once these requirements are met, the expert testimony is admissible, and the jurors may weigh that evidence however they see fit. See Stutzman, 997 F.2d at 296 ("Under the Federal Rules, certainty is an issue for the jury and does not affect admissibility."); Gomes, 2007 WL 708062, at *1 ("Even assuming the expert in this case could not render an opinion to within a reasonable degree of medical certainty, her testimony is still admissible . . . .  Ascribing weight to her testimony is the province of the jury.").

Proposed Jury Instructions and
Verdict Forms, Voir Dire Questions,                    Calendar Call
and Objections to Deposition
Designations and/or Cross-Designations

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 19th day of November, 2012.

JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record via CM/ECF